**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| CHARLES CODER, | NO.  C08-1562-RSM-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Charles Coder appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for the award of benefits.

## I.        FACTS AND PROCEDURAL HISTORY

At the time of his administrative hearing, plaintiff was a 38 year-old man who did not complete high school, but who received a GED in 1992.  Administrative Record ("AR") at 28, 80.  His past work experience includes employment as a landscape worker and telemarketer.  AR at 18.  Plaintiff was last gainfully employed in December, 2005.  AR at 18.

On December 12, 2005, plaintiff filed a claim for SSI payments. AR at 56-59. Plaintiff asserts that he is disabled due to bipolar disorder, anxiety disorder, opioid dependence, a right shoulder injury and hepatitis C. AR at 75.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 50-52, 45-46. Plaintiff requested a hearing which took place on January 4, 2008. AR at 260-302. On March 26, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 16-29. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 4-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 7.

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

Id. at 1076-77; see also Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Coder bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at

any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

_____

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

## V.    DECISION BELOW

On March 26, 2008, the ALJ issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since December 12, 2005, the application date.

2.    The claimant has the following sever impairments: opioid dependence in remission on agonist therapy; cocaine and alcohol dependence in remission by history; bipolar disorder; and anxiety disorder not otherwise specified.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c), with no climbing of ladders, ropes, and scaffolds or work around heights and hazards.  In addition, the claimant can perform simple and repetitive work that is non-public and has limited contact with co-workers.

5.    The claimant is unable to perform any past relevant work.

6.    The claimant was born on XXXXX[2], 1967 and was thirty-eight years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.    The claimant has at least a high school education and is able to communicate in English.

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled," whether or not the claimant has transferable job skills.

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.    The claimant has not been under a disability, as defined in the Social Security Act, since December 12, 2005, the date the application was filed.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

AR at 18-29.

VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Did the ALJ properly evaluate the opinions of examining physicians James Hopfenbeck, M.D., Carla Hellekson, Ph.D. and Mark Koenen, M.D.?

2.     Did the ALJ properly evaluate the opinion of Raymond West, M.D.?

3.     Did the ALJ err at step five by concluding that plaintiff would work as a small products assembler?

Dkt. No. 18 at 1-2.

VII.     DISCUSSION

A.    <u>The ALJ Did Not Properly Evaluate the Psychological Opinions</u>

    *1.    Standards for Review*

As a matter of law, more weight is given to a treating physician's opinion than to that of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his

conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p 1996 WL 374180, at *2 (S.S.A.). Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Orn* at 495 F.3d 632-33.

### 2. *Dr. Hopfenbeck*

James Hopfenbeck, M.D. is an examining psychiatrist who reviewed the reports from Dr. Hellekson, and examined the plaintiff himself in late 2006. He agreed with Dr. Hellekson that the plaintiff was a true dual disorder client and that his mental health problems existed

independently from his substance abuse. He noted that despite becoming somewhat stable with a methadone program, plaintiff was still prone to severe anxiety and to episodes of mood instability as well as protracted major depression. He noted plaintiff related "very poorly" to others, being intolerant to having to spend time with more than one other person at a time. AR at 224. He concluded by stating that "[I]f Mr. Coder attempted to work now I think he would be prone to episodes of panic and agoraphobia, would be very jumpy and relate very poorly to other people, have a lot of trouble on task persistence, and almost certainly fail to be effective or successful in the workplace." AR at 224-25. Dr. Hopfenbeck assessed plaintiff's general functioning as 40 on the Global Assessment of Functioning ("GAF") scale.[3]

Later, Dr. Hopfenbeck completed a form for purposes of state assistance. There, he opined that plaintiff had marked limitations in his ability to understand, remember, and follow complex instructions, learn new tasks, exercise judgment and make decisions, relate appropriately to and tolerate the pressure and expectations of a normal work setting, and that he was severely limited in his ability to interact appropriately in public contacts. AR at 230.

As noted above, the ALJ may reject the opinions of a controverted examining physician only by providing specific and legitimate reasons that are supported by the record. The ALJ rejected Dr. Hopfenbeck's opinions with two sentences. According to the ALJ, "When evaluating the claimant's functioning and medical opinions of record, the undersigned has considered, among other things, the claimant's actual functioning and activities, which are less limited than Dr. Hopfenbeck's conclusion and speculation about claimant's ability to work. Dr. Hopfenbeck's opinions that claimant is unable to work is not consistent with the claimant's

---

[3] The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as lack of friends and/or the inability to keep a job. *Id.*

actual functioning and activities and is inconsistent with other evaluation findings and medical opinions as discussed below." AR at 26-27.

The acknowledgment of a conflict does not amount to providing specific and legitimate reasons for disregarding the opinions of the treating physician. Moreover, it is not clear that the alleged conflicts actually support the conclusions drawn by the ALJ. The ALJ, for example, referred to Dr. Koenen's opinions for support. However, Dr. Koenen gave an opinion that, although it included an ability to perform simple, detailed and complex tasks and accept instructions from supervisors, also noted plaintiff's inability to be reliable, which the VE found would be an impediment to any job. AR at 299. "His anxiety will make it difficult for him to interact with co-workers and the public and *would probably interrupt a normal workday*. His ability to deal with the usual stress encountered in competitive work is limited, but could eventually be expected to improve with psychotherapy and exposure to the workplace." AR at 209 (emphasis added). Thus, in the most critical respects, Dr. Koenen's opinions support the conclusions reached by Dr. Hopfenbeck rather than providing specific and legitimate reasons to reject them.

The opinions of the reviewing State physicians do not provide a specific and legitimate reason to discount the reports of Dr. Hopfenbeck and Dr. Koenen. Neither of the State physicians saw the plaintiff. Reviewing physicians opinions carry the least weight in the medical hierarchy. They can amount to "substantial evidence" only if otherwise consistent with other evidence in the record.

The Commissioner suggests that the opinions of the ALJ and the reviewing physicians are supported by the plaintiff's activities. The Commissioner is wrong.

Plaintiff attended methadone treatment six mornings a week (Tr. 26, 222, 270). Sometimes, as emphasized by plaintiff (Pl.'s Br. at 19), plaintiff would go straight home after treatment (Tr. 64, 268-69). At other times, however, plaintiff would leave treatment and attend

an AA/NA meeting, go to the library, or go to the Recovery Café for lunch (Tr. 61, 268-69). He also attended church services about once-a-month, rode the bus and visited the library.

The problem with the ALJ's contention is that none of these activities speak to his ability to deal with his depression, his sense of paranoia about others, and the translation of these impairments into the ability to succeed in the work place. For example, the plaintiff does ride the bus to get where he needs to be. However, he avoids crowded buses due to fear. AR at 266. When he attended church, he had to sit in the back so people would not be in a position to look at him, and had to leave several times during the service. AR at 266, 286. This accentuates the concerns expressed by Dr. Hopfenbeck, rather than contradicting them.

The Commissioner also contends that as evidence of his non-disability, plaintiff meets his one friend for coffee on occasion. However, consistent with Dr. Hopfenbeck's conclusions, Tina Logan, plaintiff's friend, testified that plaintiff is unable to engage in sustained activities. "[H]is mood will switch and he starts getting up and pacing, looking around, thinking people are looking at him or he feels that just wants to leave and it just feels like he, he feels threatened sometimes by people and he gets paranoid." AR at 292. She also noted his lack of concentration. "We'll have, start having a conversation and then all of a sudden he's not following the conversation anymore. It's like he's lost the conversation." AR at 293. The ALJ did not find that Ms. Logan was not credible. Instead, he simply asserted that, even if her testimony was credited, it did not establish disability. AR at 26. Once again, this falls fall short of the ALJ's responsibility. Lay witness testimony as to a claimant's symptoms or how an impairment affects the ability to work is competent evidence that cannot be disregarded without discussing the reasons therefore and making express credibility findings. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Because the ALJ failed to make any adverse credibility determinations in this regard, the Court accepts Ms. Logan's testimony as true. Ms. Logan's testimony supports Dr. Hopfenbeck's conclusions that if plaintiff attempted to work "he would

be prone to episodes of panic and agoraphobia, would be very jumpy and relate very poorly to other people, have a lot of trouble on task persistence, and almost certainly fail to be effective or successful in the workplace." AR at 225.

### 3. Dr. Hellekson

Dr. Hellekson saw plaintiff in October 2005. She assessed him with marked depression and physical complaints. She noted severe impairments in the areas of expression of anger, social withdrawal, motor retardation, and global illness. He had a marked inability to perfom routine tasks, a severe inability to relate appropriately to co-workers and supervisors and have appropriate interactions with the public, as well as a marked inability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR at 241-42. She concluded "longstanding disability who needs SSI advocacy. Unclear to this writer why he has not yet been approved." *Id.*

This report from Dr. Hellekson was consistent with an earlier report she issued in December 2005, in which she found plaintiff with severe limitations in abilities to learn new tasks, exercise judgment and make decisions, and perform routine tasks, as well as severe limitations in plaintiff's abilities to relate to co-workers, supervisors and the public and to respond appropriately to and tolerate pressures and expectations of a normal work setting. AR at 188. The ALJ summarily rejected Dr. Hellekson's reports stating only that the "opomopms are not fully explained or supported by evaluation findings and, as discussed below, are not consistent with other evaluation findings and opinions of record or the claimant's actual functioning.

The ALJ is wrong. Dr. Hellekson's reports are very consistent with those of Dr. Hopfenbeck, and are consistent with the testimony of plaintiff as to his daily activities and the testimony of Tina Logan. The ALJ's decision is simply not supported by substantial evidence regarding plaintiff's mental impairments.

B.    Because a Remand for Benefits is the Appropriate Remedy, It is Not Necessary to Discuss the Remaining Assignments of Error

Plaintiff also asserts that the ALJ erred in his assessment of Dr. West's opinions regarding plaintiff's physical limitations, and whether there are jobs in the economy that plaintiff could perform even if the ALJ's RFC was appropriate. Because this Court believes this case should be remanded for the award of benefits, these arguments are moot. As discussed above, remand for an award of benefits is appropriate when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*McCartey*, 298 F.3d at 1076. The ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Hopfenbeck and Hellekson. If properly credited and combined with the testimony of Ms. Logan, there would be no outstanding issues to be resolved and it would be clear that the ALJ would be required to find the plaintiff disabled. There is nothing to be gained by a remand for further proceedings. Accordingly, this matter should be remanded for the award of benefits.

VIII.    CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for the award of SSI benefits. A proposed order accompanies this Report and Recommendation.

DATED this 17th day of June, 2009.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge